# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zachary Shields,                     :

               Petitioner       :

                                    :

           v.                    :    No. 792 C.D. 2019

                                    :    Submitted: February 7, 2020

Pennsylvania Board of Probation   :

and Parole,                         :

              Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE ANNE E. COVEY, Judge
                     HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                     **FILED: March 12, 2020**

Zachary Shields (Shields) petitions for review of a May 21, 2019 Order of the Pennsylvania Board of Probation and Parole[1] (Board) that affirmed the Board's action mailed March 14, 2018, recommitting Shields as a convicted parole violator (CPV), ordering him to serve his unexpired term of 1 year, 11 months, 29 days, and denying him credit for time spent at liberty on parole, also known as street time. Shields is represented by Jessica A. Fiscus, Esquire (Counsel), of the Erie County Public Defender's Office. Counsel has filed a Petition for Leave to Withdraw as

---

[1] Subsequent to the filing of the Petition for Review, the Pennsylvania Board of Probation and Parole has been renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa.C.S. §§ 6101, 6111(a).

Counsel (Application to Withdraw) and a no merit letter, which are based on her conclusion that the Petition for Review is without merit. For the following reasons, we grant Counsel's Application to Withdraw and affirm the Board's Order.

Shields was serving a sentence of one to three years of incarceration for violating his probation on felony drug charges, with a maximum sentence date of October 20, 2018, when he was paroled by the Board on June 13, 2016. (Sentence Status Summary, Certified Record (C.R.) at 1; Order to Release on Parole/Reparole, C.R. at 7.) Shields was released from custody on October 20, 2016. (C.R. at 7.) On January 22, 2017, the Philadelphia Police Department arrested Shields for aggravated assault and related charges following a fight. (Arrest Report, C.R. at 13.) These charges were withdrawn after the alleged victim refused to cooperate. (Supervision History, C.R. at 30.) On January 24, 2017, a parole agent picked Shields up at an unapproved residence, returned him to his approved residence, and directed him to report to the Northwest Office on January 26, 2017. (*Id.*) Shields reported as directed and tested positive for benzodiazepines. (*Id.*) He was issued a Parole Violation Warning. (*Id.* at 15.) Shields also executed new Special Conditions of Parole, directing him to avoid certain areas and to observe a curfew at his approved residence. (*Id.* at 16, 30.) After missing a scheduled visit, Shields was placed on electronic monitoring. (*Id.* at 17-19, 30.) Shields again missed a scheduled visit, and a review of his electronic monitoring revealed he was in areas from which he was prohibited. (*Id.* at 30.)

On April 29, 2017, a parole agent visited Shields at his approved residence and asked to inspect his room, at which time the parole agent observed a loaded handgun in an open drawer of a dresser. (*Id.*) The parole agent contacted the Philadelphia Police Department, which arrested Shields. (Arrest Report, C.R. at 20.)

That same day, the Board issued a Warrant to Commit and Detain. (*Id.* at 25.) The following day, the Philadelphia Police Department charged Shields with various violations of the Uniform Firearms Act, 18 Pa.C.S. § 6101-6128,[2] and bail was set, which Shields did not post. (*Id.* at 22, 72.) On November 2, 2017, Shields was convicted of possession of a firearm prohibited and possession of a firearm with manufacturer number altered, and his sentencing was deferred pending a presentence investigation. (*Id.* at 42.)

On December 5, 2017, Shields received a Notice of Charges and Hearing, was advised of his rights, and waived a panel hearing. (*Id.* at 42-44.) A revocation hearing was held before an examiner on December 12, 2017, at which Shields was represented by a public defender. (Hearing Report, C.R. at 50.) A parole agent presented certified copies of a conviction, without objection, and Shields acknowledged the new conviction. (Hearing Transcript, C.R. at 66-67.) At the hearing, then counsel for Shields argued that Shields had no other convictions, was not using the handgun that was found in a violent manner, was working full time before the arrest, and was going to school. (*Id.* at 67-68.) The hearing examiner recommended recommitting Shields as a CPV to serve his unexpired term and denying Shields credit for time spent at liberty on parole. (Hearing Report, C.R. at 52-53.) The hearing examiner based his recommendation to deny Shields time credit on his "poor adjustment under supervision despite parole staff's efforts" and the latest arrest was his second arrest in a six-month period. (*Id.* at 57.) On January 8, 2018, Shields was sentenced to four to eight years of incarceration on each firearm

---

[2] Specifically, Shields was charged with violating: Section 6105 related to persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S. § 6105; Section 6106 related to firearms not to be carried without a license, 18 Pa.C.S. § 6106; and Section 6108 related to carrying firearms on public streets or public property in Philadelphia, 18 Pa.C.S. § 6108.

charge to be served concurrently. (*Id.* at 73-74.) That same day, a second panel member signed the Hearing Report. (*Id.* at 57.)

By action mailed on March 14, 2018, the Board recommitted Shields as a CPV to serve his unexpired term of 1 year, 11 months, 29 days based on his firearm convictions. (Notice of Board Decision, C.R. at 81-82.) The Board indicated it did not award Shields credit for time spent at liberty on parole because of his "poor adjustment under supervision" and "2 arrests in 6 months under street supervision." (*Id.* at 82.) Using January 8, 2018, as the custody for return date, and after crediting Shields for the one day he was detained solely on the Board's detainer, the Board recalculated the new maximum date as January 7, 2020, based upon the 729 days of backtime owed.[3] (Order to Recommit, C.R. at 88.)

On April 10, 2018, and April 11, 2018,[4] the Board received administrative remedies forms that Shields filed pro se, wherein he alleged the new maximum date violated the separation of powers doctrine by "interfer[ing] with the finality of court orders" and that the Board was without authority to extend his judicially imposed maximum date. (C.R. at 93-94, 97-98.) In his petitions for administrative review, which accompanied his administrative remedies forms, Shields also alleged that his

---

[3] Pursuant to *Taylor v. Pennsylvania Board of Probation and Parole*, 746 A.2d 671, 674 (Pa. Cmwlth. 2000), "the expiration of a parolee's maximum term renders an appeal of a Board revocation order moot." However, as in *McClinton v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1287 C.D. 2018, filed May 29, 2019), slip op. at 3 n.6, Shields is still serving a sentence on the new firearm charges and the issues raised in the present matter affect his new maximum date on those charges, so this matter is not rendered moot. *McClinton* is an unreported memorandum opinion of the Court, which may be cited for its persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[4] Shields also filed pro se administrative remedies forms on November 27, 2017, and February 8, 2018, (C.R. at 39, 83), and submitted correspondence to the Board on March 14, 2018, (*id.* at 90), which the Board deemed premature since it had yet to issue a decision on whether to revoke his parole, (Order, C.R. at 118).

street time should not have been taken because he did not commit a crime of violence and one of the arrests was "thrown out." (*Id.* at 93, 97.) The Board also received correspondence from Shields on: June 20, 2018; July 27, 2018; December 28, 2018; January 23, 2019; January 28, 2019; February 21, 2019; and April 10, 2019, wherein Shields inquired as to the status of his administrative review forms and questioned whether he received credit for all time to which he was entitled and the recalculation of his maximum date. (*Id.* at 100-12.)

The Board responded to the administrative appeal on May 21, 2019. As for the claim that the Board lacked authority to recalculate his maximum date, the Board stated it was statutorily authorized to recommit Shields as a CPV and recalculate his maximum sentence when it denied him credit for time spent at liberty on parole, something he was aware it could do. (Board Order.) The Board next explained how it recalculated the maximum date. The Board concluded that it acted within its discretion when it denied Shields credit from time spent at liberty on parole. (*Id.*)

On June 20, 2019, Shields, with the assistance of Counsel, filed his Petition for Review with this Court. Therein, Shields raised three bases for finding the Board erred: (1) by "refus[ing] to award credit for time at liberty on parole when the reason offered was either legally insufficient and/or unsupported by the evidence of record"; (2) by establishing an incorrect custody for return date, which affected recalculation of his maximum date; and (3) in recalculating his maximum date to exceed the judicially imposed maximum date. (Petition for Review ¶¶ 6-8.) In addition, Shields incorporated into his Petition for Review any issues he raised in his requests for administrative relief. (*Id.* ¶ 9.)

After a briefing order was issued, Counsel filed the Application to Withdraw on the ground that the Petition for Review lacks merit. In support of Counsel's

Application to Withdraw, she also filed a letter dated September 16, 2019 (*Turner*[5] letter), which Counsel sent to Shields and the Board, along with the Application to Withdraw, detailing her review of the certified record, correspondence from Shields, and relevant case law. After summarizing the relevant facts, Counsel addressed the three issues raised by Shields in the Petition for Review.[6] First, Counsel acknowledged that the Board had to provide reasons for its denial of time credit since the firearm offenses were not considered violent crimes. Counsel then explained that the Board offered two reasons, poor supervision history and two arrests within six months, both of which Counsel found were supported by the record. Counsel detailed the failed drug tests, missed scheduled visits, warning to maintain his approved residence, violation of area restrictions, and imposition of additional parole conditions and electronic monitoring, as well as his two arrests, although only one resulted in conviction. (*Turner* Letter at 5.) "Given this supervision history as a whole," Counsel concluded, "it is difficult to suggest that [the Board] acted arbitrarily or did not have sufficient reason to deny credit for [the] entire six[-]month period that [Shields] remained at liberty on parole." (*Id.*) On the second issue, Counsel explained the Board properly determined January 8, 2018, as the custody for return date because that is the date the second panel member signed the hearing examiner's recommendation to recommit Shields as a CPV. (*Id.* at 6.) Counsel then explained how the Board arrived at the new maximum date of January 7, 2020. (*Id.*) Third and finally, Counsel noted that the Supreme Court has rejected any claim that

---

[5] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988).

[6] Although the Petition for Review incorporated any other issues raised in the administrative remedies forms, a review of those forms reveals no issues that were unaddressed. To the extent Shields argued separation of powers or other constitutional claims, those are encompassed by the broader issue: whether the Board had authority to extend the judicially imposed sentence.

the Board's denial of credit for street time constitutes an unconstitutional extension of a judicially imposed maximum sentence or a violation of separation of powers principles. (*Id.* at 6-7 (citing *Young v. Pa. Bd. of Prob. & Parole*, 409 A.2d 853 (Pa. 1979)).)

Having concluded that the Petition for Review lacked merit, Counsel informed Shields that he had the right to hire another attorney or file a brief on his own behalf and provided him with a copy of the Certified Record. (Application to Withdraw ¶¶ 3-4.) Counsel also served Shields with a September 18, 2019 order of this Court informing Shields that he could obtain substitute counsel at his own expense or file a brief on his own behalf. Shields has elected to file a brief on his own behalf. The Board also filed a brief on the merits of the issues raised in the Petition for Review.

Before appointed counsel may withdraw from representation in a case in which the right to counsel does not derive from the United States Constitution, such as here, the *Turner* or no merit letter must contain: (1) the nature and extent of counsel's review; (2) the issues the petitioner wishes to raise; and (3) counsel's analysis in concluding that the petitioner's appeal is without merit. *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988); *Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 (Pa. Cmwlth. 2009). In addition, counsel must send the petitioner a copy of the *Turner* letter, "a copy of counsel's petition to withdraw," and a statement advising the petitioner of his right to proceed by new counsel or pro se. *Zerby v. Shanon*, 964 A.2d 956, 960 *(*Pa. Cmwlth. 2009). Once counsel satisfies the procedural requirements of *Turner*, this Court will "conduct its own review of the merits of the case." *Id.* (citation omitted).

7

Here, Counsel has complied with the procedural requirements of *Turner*. As we have set forth, Counsel has explained the nature and extent of her review of the record, addressed the issues Shields raised in his Petition for Review, and provided a thorough analysis of those issues and Counsel's reasons for concluding that they lack merit. Counsel served copies of both the Application to Withdraw and *Turner* letter on Shields and the Board and provided Shields with a copy of the Certified Record. In Counsel's *Turner* letter and again pursuant to our September 18, 2019 order, Counsel informed Shields that he could retain substitute counsel or file a brief on his own behalf. Thus, Counsel has satisfied the procedural requirements of *Turner*.

We must now conduct our own review to determine whether, as Counsel has concluded, the Petition for Review is, in fact, without merit.[7] *Hughes*, 977 A.2d at 25.

1.  **Whether the Board erred in denying Shields credit for time spent at liberty on parole when the proffered reasons were either legally insufficient or unsupported by substantial evidence.**

In his Petition for Review Shields first asserts that the Board erred by not giving him credit for the approximately six months he spent at liberty on parole. Shields did not address this issue in the brief he filed with the Court, except to say that he should have received credit for such time because he was not convicted of any of the enumerated offenses mandating that street time be taken and that he was working and going to school before his arrest. (Shields's Brief (Br.) at 13-14.) The Board responds that it was within its discretion to deny credit for the time Shields

---

[7] We review the action of the Board for "whether the decision was supported by substantial evidence, whether an error of law occurred or whether constitutional rights were violated." *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1023 n.5 (Pa. Cmwlth. 2017) (quoting *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008)).

8

spent at liberty on parole, it provided reasons for doing so, and those reasons are supported by the record.

Section 6138(a)(2.1)(i) of the Prisons and Parole Code (Parole Code) provides:

> The board may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:
>
>> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.[]C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.[]C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

61 Pa.C.S. § 6138(a)(2.1)(i). We agree with Shields that the offenses for which he was ultimately convicted were not crimes of violence.

However, it is well settled that by the plain statutory language, which states "[t]he board **may, in its discretion,** award credit . . . for the time spent at liberty on parole . . . ," the General Assembly granted the Board broad discretion in parole matters. *Id.* (emphasis added); *see also Commonwealth v. Vladyka*, 229 A.2d 920, 922 (Pa. 1967). To properly exercise that discretion, "the Board must articulate the basis for its decision" and "simply checking 'No' on a standard hearing form" is not enough. *Pittman v. Pa. Bd. of Prob. & Parole*, 159 A.3d 466, 474 (Pa. 2017). However, the Board's articulation of its basis "need not be extensive" and a single sentence usually will suffice. *Plummer v. Pa. Bd. of Prob. & Parole*, 216 A.3d 1207, 1211 (Pa. Cmwlth. 2019).

Here, the Board complied with its statutory duty of providing a brief statement of the reasons for its action. It expressly stated that it was exercising its discretion

and was not awarding Shields with credit for the time he spent at liberty on parole "because of [his] poor adjustment under supervision and [because he] had two arrests within [six] months of supervision." (Order at 2.) Just three months after he was released, Shields was arrested for his alleged role in an aggravated assault. Although Shields ultimately was not convicted in connection to this incident, the arrest set forth a chain of events over the next three months that support the Board's conclusion that Shields did not adjust well. Just days after the arrest, he was issued a parole violation warning and instructed to stay out of certain areas and to observe a curfew at his approved residence. He was picked up at an unapproved residence and tested positive for drugs. Shields missed not one but two scheduled visits with his parole agent. Despite repeated instruction to avoid certain areas, Shields did not comply and ultimately was placed on electronic monitoring, which still revealed he was not remaining at his approved residence and was venturing to the restricted areas. (*See* Supervision History, C.R. at 30-31, 47-48.) In short, we cannot conclude that the Board erred when it denied him credit for time spent at liberty on parole given his arrests and the numerous other instances of noncompliance with the terms and conditions of his parole in such a short period of time, as set forth in the record. Accordingly, the first issue raised by Shields lacks merit.

2.    **Whether the Board erred in establishing the custody for return date, thereby affecting the recalculation of his maximum sentence.**

Having concluded that the Board did not err in denying Shields street time credit, we must now examine whether the Board erred in calculating the maximum date by using January 8, 2018, as his custody for return date. Although he lists this as an issue in his Petition for Review and in the Statement of Questions Involved in his brief, Shields does not otherwise address why the custody for return date is

10

incorrect. The Board does not respond to this argument. Following an independent review of the record, we conclude the Board did not err.

In *Wilson v. Pennsylvania Board of Probation and Parole*, 124 A.3d 767, 770 n.6 (Pa. Cmwlth. 2015), we explained that until a second Board member signs a hearing examiner's recommendation, the Board cannot officially revoke someone's parole. Therefore, the date the second Board member's signature is acquired is the date from which the new maximum date is calculated. *Id.*

Here, the second Board member signed the Hearing Examiner's Recommendation on January 8, 2018, thereby establishing a custody for return date. (C.R. at 57.) At the time of his release on parole on October 20, 2016, the maximum date for Shields was October 20, 2018. This left 730 days remaining on his sentence. The Board credited Shields one day for the period of time he was incarcerated solely on the Board's detainer,[8] which is consistent with the Supreme Court's decision in *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980).[9] This left Shields with 729 days remaining on his sentence. As discussed above, the Board advised Shields that it was exercising its discretion not to award

---

[8] On April 29, 2017, the Board issued its detainer for Shields. (C.R. at 25.) The following day, he was charged with the firearm offenses and bail was set, which he did not post. (*Id.* at 72.)

[9] In *Gaito*, the Supreme Court held that if the parolee has met bail on the new charges, but remains in custody **solely** on the Board's detainer, then the time the parolee spends in custody "shall be credited against [the] original sentence." 412 A.2d at 571. On the other hand, if the parolee "remains incarcerated prior to trial because [the parolee] has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to [the] new sentence." *Id.* Similarly, when a parolee "[i]s detained under both the Board's warrant and the new criminal charges, this time is properly allocated to his new criminal sentence." *Hammonds v. Pa. Bd. of Prob. & Parole*, 143 A.3d 994, 999 (Pa. Cmwlth. 2016). Only if "it is not possible to award all of the credit on the new sentence because the period of pre-sentence incarceration exceeds the maximum term of the new sentence" may the excess time be applied to the parolee's original sentence. *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 355 (Pa. Cmwlth. 2007) (emphasis omitted).

11

him with credit for the time he spent at liberty on parole. When 729 days is added to the custody for return date of January 8, 2018, the new maximum sentence date is January 7, 2020, as calculated by the Board. Having found the Board used a proper return date and properly calculated his maximum date, the second issue raised by Shields is also without merit.

### 3. Whether the Board improperly extended the judicially imposed maximum date in violation of the separation of powers doctrine.

This brings us to the final issue raised by Shields: whether the Board improperly extended his judicially imposed maximum date. Shields argues the Board could not infringe on the judiciary's sentencing power in violation of the separation of powers doctrine. He also appears to argue that the act commonly referred to as the Parole Act,[10] which was repealed by the Parole Code, is unconstitutional to the extent it attempts to give the Board power to do so. Shields argues that because the Board took his street time, which was just 6 months, he is now being required to serve 1 year, 11 months, 29 days. Shields also argues that because the Board extended his maximum date without the benefit of a hearing, his due process rights were violated.

The Board responds that it did not extend his original sentence or alter his original judicially imposed sentence. It explains that the maximum sentence originally imposed by the trial court simply means Shields could not be confined for more than that amount of time. Here, the Board asserts, the maximum amount of

---

[10] Shields references Section 21 of the Parole Act, but it appears he means Section 21.1 of the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, added by Section 5 of the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. § 331.21a, *repealed by* Section 11(b) of the Act of August 11, 2009, P.L. 149, No. 33, effective October 13, 2009. Section 21.1 is similar to Section 6138 of the Parole Code, which replaced the Parole Act.

12

time Shields will be confined on the original charges did not change; rather, the date upon which his original sentence will expire changed.

We agree with the Board. As the Court recently explained in *Hughes v. Pennsylvania Board of Probation and Parole*, 179 A.3d 117, 121 (Pa. Cmwlth. 2018), "the Board **did not impose an additional sentence** on [Shields], but, rather, directed [Shields] to **complete the original judicially-mandated sentence**." In *Hughes*, we explained:

> Section 6138(a)(1) [of the Parole] Code provides that any parolee who, during the period of parole, commits a crime punishable by imprisonment and is convicted or found guilty of that crime may be recommitted as a convicted parole violator. 61 Pa.[]C.S. § 6138(a)(1). If the parolee is recommitted as a CPV, he must serve the remainder of the term that he would have been compelled to serve had parole not been granted (i.e., "backtime"), with no time for liberty on parole, unless the Board, in the exercise of its sole discretion, chooses to award credit. Section 6138(a)(2), (2.1) of the [Parole] Code, 61 Pa. C.S. § 6138(a)(2), (2.1).

*Id.* at 120. Because the Board only recommitted Shields to complete his judicially mandated sentence, it did not improperly extend that sentence, as he contends. Therefore, this argument likewise lacks merit.

Based upon the foregoing, we grant Counsel's Application to Withdraw and affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zachary Shields,                               :
                        Petitioner             :
                                               :
             v.                                :      No. 792 C.D. 2019
                                               :
Pennsylvania Board of Probation                :
and Parole,                                    :
                        Respondent             :

# **O R D E R**

    **NOW**, March 12, 2020, the Petition for Leave to Withdraw as Counsel filed by Jessica A. Fiscus, Esquire, is **GRANTED**, and the Order of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge