Jerome TAYLOR, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1999.
Decided Feb. 17, 2000.

David Crowley, Bellefonte, for petitioner.

Susan M. Zeamer, Harrisburg, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

KELLEY, Judge.

Jerome Taylor (Taylor) appeals from a November 6, 1998 order of the Pennsylvania Board of Probation and Parole (Board) denying Taylor administrative relief from the Board's January 27, 1997 revocation order. Also before this Court for disposition is the Board's motion to dismiss as moot/application for stay.

On September 13, 1983, Taylor was sentenced by the Philadelphia Court of Common Pleas to serve a period of two to ten years for the offenses of rape and involuntary deviate sexual intercourse. Taylor was released on parole on June 9, 1986, recommitted as a technical parole violator on July 13, 1987, reparoled on June 15, 1989, recommitted again on June 3, 1992, and released for the last time on December 31, 1992.

On December 21, 1993, the Board again declared Taylor delinquent and directed its staff to administratively close Taylor's case if Taylor was not arrested or located by January 29, 1996. The Board, however, did not notify Taylor of this decision. On September 12, 1996, Board agents arrested Taylor for parole violations committed before December 21, 1993. Following a violation hearing, the Board, by order dated January 27, 1997, recommitted Taylor as a technical parole violator to serve ten additional months of his original ten-year sentence.

On February 28, 1997, Taylor filed, *pro se*, an administrative appeal contending that the Board could not recommit Taylor since the Board had directed its staff to close his case by January 29, 1996. The Board dismissed Taylor's appeal as untimely because Taylor failed to file his appeal within thirty days of the mailing date of the Board's order as prescribed by

37 Pa.Code § 73.1(a)(1).[1] The Board also noted that even if the appeal had been timely filed, Taylor's request would still have been denied because the Board's decision to close Taylor's case had not been served on Taylor, and, thus, was never entered as an order pursuant to Section 5572 of the Judicial Code, 42 Pa.C.S. § 5572.[2] An appeal to this Court followed.

By opinion and order entered July 13, 1998, this Court affirmed the Board's denial of Taylor's request for administrative relief because Taylor's request for administrative relief from the Board's January 27, 1997 revocation order was untimely. We pointed out that Taylor filed his administrative appeal on February 28, 1997, which was 32 days after the entry of the Board's January 27, 1997 revocation decision. Taylor made no allegations that fraud or a breakdown in the Board's operation caused him to file his request for administrative relief two days late and there was no dispute that Taylor received notice of the January 27, 1997 decision and the time within which to file his appeal.

Taylor filed an application for reargument with this Court and by order entered September 4, 1998, this Court denied the application but withdrew its July 13, 1998 opinion and order and remanded this matter to the Board for a hearing to determine whether the administrative appeal was timely filed. On remand, the parties stipulated to the following facts in lieu of a hearing:

1. The envelope, a correct copy of which is attached hereto as Exhibit "A", in which Mr. Taylor mailed his administrative appeal of the revocation decision mailed January 27, 1997, was postmarked February 26, 1997.

2. Jerome Taylor gave the administrative appeal to the Department of Corrections staff for mailing to the Board's Central Office on February 24, 1997.

3. The Board received the administrative appeal at its Central Office on February 28, 1997.

4. Jerome Taylor is incarcerated at the State Correctional Institution at Rockview and was so incarcerated at all times relevant to the inquiry herein and has no access to the respondent's Central Office, the United States Postal Service, a fax machine, or any overnight mail delivery services.

5. The Board denied petitioner's administrative relief on its merits by correspondence dated June 6, 1997.

6. The Board has sustained no harm from the delay in their receipt of Jerome Taylor's *pro se* Petition for Administrative Relief.

Based on these stipulated facts, the Board by decision dated November 6, 1998, dismissed Taylor's administrative appeal from the Board's January 27, 1997 decision as untimely. The Board did not rule on the merits. The Board determined that it received Taylor's administrative appeal on February 28, 1997, 32 days after the mailing date of the revocation decision. The Board stated that whether the administrative appeal was given to prison staff for mailing or actually placed in the mail within the 30 day appeal period is, as a matter of law, completely irrelevant to a legal determination of whether the administrative appeal was timely. The Board pointed out that this Court has rejected the argument that the mailbox rule applies to an administrative appeal of a Board decision and has held that under 1 Pa. Code § 31.11,[3] an administrative appeal is

---

1. Section 73.1(a)(1) provides, in pertinent part, that appeal shall be received at the Board's Central Office within 30 days of the mailing date of the Board's order.

2. Section 5572 provides, in pertinent part, that the date of service of an order of a government unit, which shall be the date of

mailing if service is by mail, shall be deemed to be the date of entry of the order.

3. Section 31.11 provides as follows:

Pleadings, submittals or other documents required or permitted to be filed under this part, the regulations of the agency or any other provision of law shall be received for

untimely unless the Board actually receives that administrative appeal at its Central Office within 30 days of the mailing date of the Board decision from which the administrative appeal is taken. *See Maldonado v. Pennsylvania Board of Probation and Parole*, 89 Pa.Cmwlth. 576, 492 A.2d 1202 (1985).[4]

On November 10, 1998, Taylor filed an appeal with the Court from the Board's November 6, 1998 administrative decision. On December 18, 1998, the Board filed a motion to limit Taylor's appeal to the issue of timeliness. On January 5, 1999, this Court denied the Board's motion without prejudice to the Board to argue the issue of timeliness in its brief. In his appeal on the merits, Taylor raises the following issues:

1. Whether the "prisoner mailbox rule" applies to *pro se* administrative appeals to the Pennsylvania Board of Probation and Parole; and

2. Whether the Board lacks jurisdiction to revoke parole and extend a parole violation maximum date after the Board closes a parolee's case.

On January 28, 1999, the Board filed a motion to dismiss/application for stay Taylor's appeal.[5] Therein, the Board alleged that Taylor's maximum term expired on December 27, 1998 and he was released from confinement. The Board alleged further that because Taylor's maximum term has expired and he is no longer under the custody or supervision of the Commonwealth, this matter is moot. Taylor filed an answer to the motion. Therein, Taylor

avers that this Court held in *Lawson v. Pennsylvania Board of Probation and Parole*, 105 Pa.Cmwlth. 427, 524 A.2d 1053 (1987), that the expiration of a petitioner's parole violation maximum date would not moot an appeal if the issues therein were of great public importance and capable of repetition. Taylor avers further that the Board's refusal to recognize that the "prisoner mailbox rule" applies to *pro se* administrative appeals is of great public importance and capable of repetition.

We will address first the Board's motion to dismiss. Clearly, the expiration of a parolee's maximum term renders an appeal of a Board revocation order moot. *See Johnson v. Pennsylvania Board of Probation and Parole*, 505 Pa. 569, 482 A.2d 235 (1984); *Lawson*. It is well settled that an appeal will be dismissed when the occurrence of an event renders it impossible for the court to grant the requested relief. *Goldsmith v. Lower Moreland School District*, 75 Pa.Cmwlth. 288, 461 A.2d 1341 (1983). Dismissal will be refused only if the issues involved are capable of repetition yet likely to evade review and of important public interest, or where a party will suffer some detriment without the court's decision. *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131 (Pa.Cmwlth.1997), *affirmed*, 557 Pa. 11, 731 A.2d 133 (1999); *Goldsmith*.

Herein, Taylor's maximum term expired on December 27, 1998 and he was released from confinement. Accordingly, his appeal of the Board's November 6, 1998 order is moot. While we believe that

---

filing at the office of the agency within the time limits, if any, for the filing. The date of receipt at the office of the agency and not the date of deposit in the mails is determinative.

4. Although this Court has not specifically held that the "prisoner mailbox rule" applies to administrative appeals to the Board, the Pennsylvania Supreme Court has held that the "prisoner mailbox rule" applies to administrative appeals to this Court. *Smith v. Pennsylvania Board of Probation and Parole*, 546 Pa. 115, 683 A.2d 278 (1996) (holding that a

*pro se* prisoner's appeal shall be considered filed for purposes of Pa.R.A.P. 1514 when such appeal is deposited with prison officials or placed in the prison mailbox). Moreover, since its holding in *Smith*, the Pennsylvania Supreme Court has "extend[ed] the prisoner mailbox rule to all appeals by *pro se* prisoners." *Commonwealth v. Jones*, 549 Pa. 58, 64, 700 A.2d 423, 426 (1997).

5. By order of February 4, 1999, this Court directed the Chief Clerk to list the Board's motion for disposition with the merits.

the issues raised in Taylor's appeal raise questions of great public importance and are capable of repetition, we agree with the Board that said issues are not likely to evade review. There will be instances where a parolee will be able to challenge the denial of an administrative appeal as untimely on the basis of the "prisoner mailbox rule" before the parolee's maximum term expires. We recognize the long path this case has taken to come to this point. However, a decision on the merits of Taylor's appeal or on whether the prisoner mailbox rule applies to *pro se* administrative appeals to the Board simply would not render Taylor any relief as he has been released from the custody and control of the Commonwealth. Accordingly, we grant the Board's motion to dismiss Taylor's appeal as moot and will not address the merits of Taylor's appeal.

### ORDER

AND NOW, this 17th day of February, 2000, the Motion to Dismiss as Moot/Application for Stay filed by the Pennsylvania Board of Probation and Parole is granted. Jerome Taylor's appeal in the above-captioned matter is dismissed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. The majority dismisses Jerome Taylor's (Taylor) appeal as moot, holding that although Taylor raises questions of great public importance that are capable of repetition, the "prisoner mailbox rule" issue is not likely to evade review.[1] However, even if the issue involving the "prisoner mailbox rule" is not likely to evade review, the "closed case" question[2] is likely to evade review. Thus, instead of dismissing Taylor's appeal as moot, I would address both issues now.

### I. Mootness

The majority states that "the issues raised in Taylor's appeal [involve] questions of great public importance and are capable of repetition ... [but] are not likely to evade review." (Majority op. at 675.) The majority then states that there will be instances "where a parolee will be able to challenge the denial of an administrative appeal as untimely on the basis of the 'prisoner mailbox rule' before the parolee's maximum term expires." (Majority op. at 675.) However, the majority does not address whether there will be instances where a parolee can challenge the Board's jurisdiction to revoke a prisoner's parole and to impose backtime after the Board has closed the parolee's case due to the expiration of the parolee's maximum term. I believe that such a question is likely to evade review.

First, the Board stated during oral argument before this court that the Board's central office routinely closes cases when a parolee's maximum term expires. Thus, these appeals *always* involve the expiration of a parolee's maximum term of confinement. Second, the Board stated at oral argument that, despite the Board's "orders" closing cases, the Board's field offices continue to pursue delinquent parolees. Thus, these appeals *always* involve some unresolved technical parole violation. The Board's regulations authorize the Board to recommit a parolee to serve a *maximum* of eighteen months backtime for a technical parole violation. 37 Pa. Code §§ 75.3(e), 75.4. However, in the ordinary course of events, by the time this court is able to review whether the Board has jurisdiction to revoke parole and impose backtime after the Board has closed a

---

1. A court will refuse to dismiss an appeal as moot only if the issues involved are capable of repetition yet likely to evade review and are of important public interest, or where a party will suffer some detriment without the court's decision. *Goldsmith v. Lower Moreland School District,* 75 Pa.Cmwlth. 288, 461 A.2d 1341 (1983).

2. Taylor argues in his appeal to this court that the Board lacks jurisdiction to revoke a prisoner's parole and to extend the prisoner's parole violation maximum date after the Board has closed the parolee's case.

case, the parolee will have served at least eighteen months backtime.

The Board has fourteen days, or approximately half a month, from the date of detention to hold a preliminary hearing on a technical parole violation. 37 Pa.Code § 71.2(3). The Board then has 120 days, or four months, from the date of the preliminary hearing to hold a hearing on the technical parole violation. 37 Pa.Code § 71.2(10). Although the Board is required to act "promptly," 37 Pa.Code § 71.2(17), the Board is under no particular time constraints with respect to the issuance of a decision following the violation hearing; here, the Board issued its decision after four months.[3] The parolee has thirty days, or one month, from the mailing date of the Board's decision to file an appeal from a decision revoking parole. 37 Pa.Code § 73.1. Again, the Board is under no time constraints with respect to the issuance of a decision following a request for administrative relief; here, the Board issued its decision after four months.[4] The parolee has thirty days, or one month, to file an appeal to this court from a denial of administrative relief. Pa. R.A.P. 1512(a)(1). The total amount of elapsed time to this point is fourteen and a half months.

Once a parolee has appealed to this court, the Board is given forty days to certify the record to this court. Pa. R.A.P. 1541, 1931(a). Then, after certification of the record, the petitioner has forty days to file a brief. Pa. R.A.P. 2185(a). The respondent is given another thirty days to file a brief. *Id.* The petitioner may file a

reply brief within fourteen days after service of the respondent's brief. *Id.* Thus, not considering the possibility of an extension of time for filing any of these documents, the final brief will be filed *eighteen and a half months* after the parolee began serving backtime. Because the maximum amount of backtime for a technical parole violation is eighteen months, a parolee's challenge to the Board's jurisdiction to revoke parole and impose backtime will *always* evade this court's review.

Because the "closed case" issue is likely to escape this court's review, I would not dismiss this appeal as moot.

## II. "Prisoner Mailbox Rule"

Before addressing the "closed case" issue, I must address whether Taylor's appeal has been timely filed, i.e., whether the "prisoner mailbox rule" applies to administrative appeals to the Board.

Although this court has not specifically held that the "prisoner mailbox rule" applies to administrative appeals **to the Board**, the Pennsylvania Supreme Court has held that the "prisoner mailbox rule" applies to administrative appeals **to this court**. *Smith v. Pennsylvania Board of Probation and Parole*, 546 Pa. 115, 683 A.2d 278 (1996) (holding that a *pro se* prisoner's appeal shall be considered filed for purposes of Pa. R.A.P. 1514 when such appeal is deposited with prison officials or placed in the prison mailbox). Moreover, since its holding in *Smith*, the Pennsylvania Supreme Court has "extend[ed] the prisoner mailbox rule to **all** appeals by *pro se* prisoners."[5] *Commonwealth v. Jones*,

3. The violation hearing was held in September 1996; the Board rendered a decision in December 1996; and the Board mailed the decision in January 1997. (S.R. at 27, 41.)

4. Taylor filed his appeal in February 1997, and the Board issued its decision in June 1997. (O.R. at 5.)

5. In support of its holding, the court relied upon a passage from the United States Supreme Court case of *Houston v. Lack*, 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), which states:

The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the

549 Pa. 58, 64, 700 A.2d 423, 426 (1997) (emphasis added).

Because the "prisoner mailbox rule" applies to all appeals by *pro se* prisoners and because Taylor is a *pro se* prisoner here, the "prisoner mailbox rule" applies. The "prisoner mailbox rule" states that a prisoner's *pro se* appeal is deemed filed on the date that the prisoner deposits the appeal with prison authorities and/or places it in the prison mailbox. *Jones.* Here, the parties have stipulated that Taylor gave his administrative appeal to prison authorities for mailing on February 24, 1997, which is twenty-eight days from January 27, 1997, the mailing date of the Board's decision. Thus, Taylor's administrative appeal was timely filed.[6]

Accordingly, I would reverse the Board's November 6, 1998 decision dismissing Taylor's appeal as untimely.

### III. "Closed Case"

Because Taylor has filed a timely administrative appeal, I shall address whether the Board has jurisdiction to revoke a prisoner's parole and to extend his maximum term of confinement after the Board has closed the parolee's case.[7]

The record indicates that, on December 21, 1993, the Board "rendered the following decision in [Taylor's] case: Declare delinquent effective 10–14–93 and if not arrested or located by 01–29–96, cancel delinquency and close case." (S.R. at 22.) The document contains the signature of James W. Riggs, Board Secretary. (S.R. at 22.) There is nothing in the record indicating that the Board did *not* cancel Taylor's delinquency and close Taylor's case on January 29, 1996. The Board's December 21, 1993 order is part of the record certified to this court, and there is not a subsequent decision in the record rescinding that order.[8] Therefore, when the Board issued its warrant and arrested Taylor on September 12, 1996, there was no delinquency, and Taylor had served his maximum term. Because Taylor was no

---

vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

6. Having determined that Taylor filed a timely administrative appeal with the Board, I note that our scope of review of Taylor's appeal from the Board's June 6, 1997 decision, which dismissed Taylor's administrative appeal on the merits, is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. The Board contends that Taylor has waived this issue because he did not raise the matter at his hearing. (Board's brief at 8.) However-

er, the Board concedes that Taylor did not know that his case had been closed until *after* the hearing. (Board's brief at 9.) Therefore, Taylor could not have raised the matter at his hearing.

The Board also contends that Taylor has waived this issue because he did not raise the matter in his administrative appeal. (Board's brief at 8.) The Board is mistaken. Taylor's administrative appeal clearly states that the Board erred in its decision to recommit Taylor and to extend his maximum release date when his case had been closed. (O.R. at 3; Petition for Administrative Relief at 2.)

8. In *McFarland v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 639, 569 A.2d 374 (1989), a staff technician closed McFarland's case on the Board's computer system. A panel of the Board subsequently rescinded the unauthorized decision to close McFarland's case, and McFarland challenged the Board's authority to do so. This court affirmed the Board's rescission of the action, holding that the Board alone has the authority to close a parolee's case. Here, the Board rendered a decision to cancel Taylor's delinquency and to close Taylor's case if Taylor was not arrested or located by January 29, 1996. The Board did *not* rescind that order.

longer on parole, the Board lacked jurisdiction to revoke his parole or to extend his maximum term of confinement.[9]

Accordingly, I would reverse the Board's decision of June 6, 1997 dismissing Taylor's appeal on the merits.

Judge PELLEGRINI joins in this dissenting opinion.

---

9. The Board argues in its brief that the December 21, 1993 decision was never "entered" under 42 Pa.C.S. § 5572 because it was not served on Taylor. (Board's brief at 9.) This is irrelevant. The statutory provision at 42 Pa.C.S. § 5572 only governs the time of entry of an order of a government unit for purposes of filing an appeal from that order. *See* Section 5571(a) of the Judicial Code, 42 Pa.C.S. § 5571(a). It has nothing to do with whether those to whom the order is directed must comply with the order.

Moreover, if the Board is correct that its December 21, 1993 decision has no binding effect because it was not served on Taylor, then that portion of the Board's December 21, 1993 decision declaring Taylor to be delinquent also has no binding effect. If the Board did not "enter" an order declaring Taylor to be delinquent, then the Board had no reason to arrest Taylor after the expiration of his maximum term. In sum, the Board cannot claim that the December 21, 1993 decision has binding effect with respect to the declaration of delinquency and not with respect to the closing of the case. Clearly, the Board's position on this matter is flawed.