# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamir Hammett, :  
               Petitioner :  
    :  
          v. : No. 13 C.D. 2019
  : Submitted: September 6, 2019
Pennsylvania Board of Probation :  
and Parole, :  
             Respondent :  

BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge[1]
                **HONORABLE MICHAEL H. WOJCIK,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: May 8, 2020**

Tamir Hammett (Petitioner), pro se, petitions for review of a decision of the Pennsylvania Board of Probation and Parole[2] (Board) mailed October 16, 2018, which denied his request for administrative relief from the Board's recalculation of his maximum sentence date.[3] On appeal, Petitioner asserts that the Board erred in calculating his maximum sentence date. Upon review, seeing no error, we affirm.

---

[1] This case was reassigned to the undersigned judge on March 27, 2020.

[2] Subsequent to the filing of the petition for review, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa.C.S. §§ 6101, 6111(a).

[3] By order of this Court dated January 14, 2019, we granted Petitioner's request to petition for review *nunc pro tunc* because "[i]t appear[ed] that new inmate mail processes
**(Footnote continued on next page…)**

## I. Factual Background and Procedure

On July 11, 2012, Petitioner was sentenced to a 1-year, 11-month, and 30-day to 6-year, 11-month, 29-day term of imprisonment (2012 Sentence) for burglary and the violation of a previously imposed probationary term. (Certified Record (C.R.) at 8.) Petitioner's minimum sentence date for the 2012 Sentence was April 27, 2013, and his maximum date was April 26, 2018. (*Id.*) By order dated August 1, 2014, the Board granted Petitioner parole on the 2012 Sentence, and Petitioner was released pursuant to this order on August 20, 2014. (*Id.*)

By action dated September 19, 2014, the Board declared Petitioner delinquent effective as of September 5, 2014. (*Id.* at 12.) Thereafter, on September 26, 2014, the Board issued a Warrant to Commit and Detain Petitioner, and Petitioner was detained the same day. (*Id.* at 13, 16.) Petitioner received a Notice of Charges and Hearing on October 2, 2014, charging him with several technical parole violations. (*Id.* at 14.) After being informed of his rights at hearings before the Board, Petitioner waived his right to a hearing before the Board and his right to counsel. (*Id.* at 15, 18.) Petitioner admitted that he was in violation of the conditions of his parole as set forth in the October 2, 2014 Notice of Charges. (*Id.* at 18.) On October 15, 2014, the Board issued a decision holding Petitioner's parole violation hearing in abeyance pending the completion of recommended programming. (*Id.* at 21.)

Petitioner was transferred to a community corrections center (CCC) on December 10, 2014, until a home plan could be established. (*Id.* at 37.) However,

---

(continued…)
instituted by the Department of Corrections resulted in [P]etitioner receiving [the Board's] decision denying his administrative appeal three weeks after it was mailed."

2

Petitioner absconded from the CCC on January 11, 2015. (*Id.*) As a result, by action recorded on January 13, 2015, the Board declared Petitioner delinquent effective as of January 11, 2015. (*Id.* at 22.)

On April 30, 2015, the Board issued a Warrant to Commit and Detain Petitioner. (*Id.* at 23.) On the same date as the issuance of the Board's detainer, Petitioner was arrested for his parole violations by Chester City Police and transported to the Delaware County Prison. (*Id.* at 37.) Thereafter, on May 6, 2015, the Chester City Police charged Petitioner with the following crimes stemming from events that occurred on April 24, 2015: (1) simple assault; (2) recklessly endangering another person; (3) terroristic threats; (4) harassment; (5) stalking; (6) domestic violence; (7) arson; (8) causing or risking catastrophe; (9) criminal mischief; (10) burglary; (11) criminal trespass; (12) robbery; (13) theft by unlawful taking or disposition; (14) receiving stolen property; and (15) disorderly conduct (2015 Charges). (*Id.* at 24-30, 65-66.)

Petitioner received another Notice of Charges and Hearing from the Board on May 7, 2015, which again charged Petitioner with several technical parole violations. (*Id.* at 34.) After again being informed of his rights at hearings before the Board, Petitioner waived his right to a hearing before the Board and his right to counsel. (*Id.* at 35, 41.) Petitioner admitted that he was in violation of the conditions of his parole as set forth in the May 7, 2015 Notice of Charges. (*Id.* at 41.) On May 13, 2015, bail on the 2015 Charges was set in the amount of 10% of $50,000.00, which was not posted by Petitioner. (*Id.* at 79.)

On May 27, 2015, the Board issued an Order to Recommit, therein revoking Petitioner's parole and recommitting him as a technical parole violator (TPV) to serve six months' backtime for multiple technical parole violations. (*Id.* at 50-54.)

Petitioner was given credit for his time spent at liberty on parole before he absconded from the CCC on January 11, 2015. (*Id.* at 55.) However, 109 days were added to his maximum sentence due to Petitioner's delinquency, representing the period from January 11, 2015, when he absconded from the CCC, to April 30, 2015, when he was arrested on the Board's detainer. (*Id.*) The Board's Order to Recommit listed Petitioner's return to custody date as April 30, 2015, and reflected that Petitioner owed 1201 days of backtime. (*Id.* at 50.) Accordingly, the Board recalculated Petitioner's maximum date to August 13, 2018. (*Id.* at 59.) The Board ordered that Petitioner be reparoled automatically upon the expiration of six months, with a release date not to exceed October 30, 2015, subject to any new detainers. (*Id.* at 52.)

Following a non-jury trial on the 2015 Charges, the Court of Common Pleas of Delaware County (common pleas) adjudged Petitioner guilty of: (1) simple assault; (2) terroristic threats; (3) stalking; (4) criminal trespass; (5) robbery; (6) theft by unlawful taking; (7) receiving stolen property; (8) disorderly conduct; and (9) harassment. (*Id.* at 60-61, 65-66.) On November 3, 2016, common pleas sentenced Petitioner to an aggregate 102 months to 204 months of confinement (2016 Sentence). (*Id.* at 61.) Common pleas awarded Petitioner credit towards the 2016 Sentence for his time in confinement from May 13, 2016,[4] to November 3, 2016. (*Id.*)

On November 18, 2016, Petitioner received a third Notice of Charges and Hearing, charging him as a convicted parole violator (CPV) based on the 2016 Sentence. (*Id.* at 62.) Petitioner was again informed of his rights and subsequently

---

[4] It appears that common pleas inadvertently wrote May 13, 201**6**, when it meant May 13, 201**5**, when bail was imposed on the 2015 Charges.

waived his right to a hearing before the Board and his right to counsel. (*Id.* at 64.) Petitioner admitted to receiving the 2016 Sentence. (*Id.*) By Order to Recommit dated March 8, 2017, the Board recommitted Petitioner as a CPV to serve the remainder of the 2012 Sentence. (*Id.* at 96-99.) The Board awarded Petitioner 88 days' credit for the time spent in confinement on the Board's detainers, consisting of the periods from September 26, 2014, to December 10, 2014, and from April 30, 2015 to May 13, 2015. (*Id.* at 96.) Unlike the May 27, 2015 Order to Recommit, the March 8, 2017 Order to Recommit did not award Petitioner credit for his time spent in good standing at liberty on parole. (*Id.*) The above order lists Petitioner's return to custody date as November 3, 2016, and reflects that Petitioner owed 1257 days of backtime. (*Id.*) Accordingly, the Board recalculated Petitioner's maximum sentence date to April 13, 2020.[5] (*Id.*) Additionally, the Board modified its May 27, 2015 Order to Recommit by deleting the reparole portion. (*Id.* at 98.)

On April 4, 2017, Petitioner submitted an Administrative Remedies Form challenging the Board's March 8, 2017 action as an illegal modification of his sentence. (*Id.* at 104.) By decision mailed October 16, 2018, the Board affirmed its March 8, 2017 order recommitting Petitioner as a CPV. The Board concluded that after review of Petitioner's case, there was "no indication the Board failed to

---

[5] Pursuant to *Taylor v. Pennsylvania Board of Probation and Parole*, 746 A.2d 671, 674 (Pa. Cmwlth. 2000), "the expiration of a parolee's maximum term renders an appeal of a Board revocation order moot." However, as in *McClinton v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1287 C.D. 2018, filed May 29, 2019), slip op. at 3 n.6, Petitioner is still serving a sentence on the new charges, specifically the 2016 Sentence, and the issues raised in the present matter affect his new maximum date on those charges, so this matter is not rendered moot. *McClinton* is an unreported memorandum opinion of the Court, which may be cited for its persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

properly recalculate [Petitioner's] max date." (*Id.* at 112.)  As such, the Board denied Petitioner's request for administrative relief. [6]


## II.    Discussion

On appeal,[7] Petitioner contends the Board erred in calculating his maximum date.  Citing *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401 (Pa. Cmwlth. 2019), *petition for allowance of appeal denied* (Pa., No. 92 EAL 2019, filed March 27, 2020), Petitioner argues that the Board erred "by revok[ing] credit that was previously granted" to him, (Petitioner's Brief (Br.) at 19), meaning, the Board erred by revoking the credit awarded to him in the May 27, 2015 Order to Recommit for his time spent in good standing at liberty on parole in its March 8, 2017 Order to Recommit.  *See* Section 6138(c)(2) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(c)(2) (setting forth that a parolee recommitted as a TPV "shall be given credit for the time served on parole in good standing but with no credit for delinquent time"); *but see* 61 Pa.C.S. § 6138(a)(2) (setting forth that a

---

[6] On September 12, 2017, and June 12, 2018, Petitioner submitted correspondence to the Board inquiring as to the status of his Administrative Remedies Form.  (C.R. at 106, 110.) Thereafter, on October 11, 2017, counsel for Petitioner submitted a blank administrative remedies form with the Board.  (*Id.* at 108.)  The Board, in its action mailed October 16, 2018, concluded that the above are "second and subsequent requests for relief and cannot be accepted." (*Id.* at 112; *see* Section 73.1(a)(4) and (b)(3) of the Board's regulations, 37 Pa. Code § 73.1(a)(4) ("Second or subsequent appeals and appeals which are out of time under these rules will not be received."), (b)(3) ("Second or subsequent petitions for administrative review and petitions for administrative review which are out of time under this part will not be received.").)

[7] "Our scope of review of the Board's decision denying administrative relief is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law was committed, or constitutional rights have been violated."  *Fisher v. Pa. Bd. of Prob. & Parole*, 62 A.3d 1073, 1075 n.1 (Pa. Cmwlth. 2013).

parolee recommitted as a CPV "shall be given no credit for the time at liberty on parole").

Additionally, Petitioner argues the Board erred in calculating his maximum sentence date by failing to use the correct return to custody date when it recalculated his maximum sentence date in its March 8, 2017 Order to Recommit Petitioner as a CPV. Petitioner asserts that the Board should have used April 30, 2015, as Petitioner's return to custody date, as reflected in its May 27, 2015 Order to Recommit Petitioner as a TPV, and that by not doing so, the Board "improperly changed [Petitioner's] return to custody date to November 3, 2016, without taking any action until after the October 20, 2015 release date." (Petitioner's Br at 20.) As such, Petitioner concludes his maximum sentence date should be recalculated so that he is given credit for his time spent at liberty on parole before he absconded from the CCC and from April 30, 2015, when he was arrested on the Board's detainer, until November 3, 2016, when common pleas issued the 2016 Sentence.

The Board responds by arguing that it properly calculated Petitioner's maximum date in its March 8, 2017 Order to Recommit. As to Petitioner's arguments related to *Penjuke* and whether Petitioner is entitled to credit for his time spent at liberty on parole, the Board contends that "*Penjuke* does not apply to this case because the criminal conduct that led to Petitioner's recommitment as a [CPV] occurred during the same period of parole as the violation that led to his recommitment as a" TPV. (Board's Br. at 8.) Further, the Board asserts that "extending *Penjuke* to benefit Petitioner in this case, simply because his technical parole violations were resolved before he was convicted of his new crime, would create an absurd result." (*Id.*) As such, the Board concludes it did not err by revoking the credit Petitioner received for his good standing at liberty on parole.

7

The Board does note that "Petitioner is entitled to 75 days['] credit from the Board for detention from September 26, 2014[,] to December 10, 2014[,] and 13 days of credit from the Board for detention from April 30, 2015[,] to May 13, 2015." (*Id.* at 6.)

As to Petitioner's argument that he is entitled to credit towards the 2012 Sentence for his time spent in confinement between April 30, 2015, and November 3, 2016, the Board, citing *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980), argues "Petitioner is not entitled to credit from the Board for detention from May 13, 2015[,] until November 3, 2016[,] because [Petitioner] never posted bail on the [2015 C]harges and was not detained solely by the Board during this period." (Board's Br. at 8.)

We begin our analysis of Petitioner's arguments with the issue of whether the Board violated *Penjuke* by not awarding Petitioner credit in its March 8, 2017 Order to Recommit for his time spent at liberty on parole before he absconded from the CCC as it did in its May 27, 2015 Order to Recommit. In *Penjuke*, the petitioner was granted parole, and while on parole, the petitioner violated the conditions of his parole. Thereafter, the petitioner was recommitted as a TPV. In recommitting the petitioner as a TPV, the Board extended his maximum sentence date to account for the days the petitioner was delinquent but did not add days to his maximum sentence date for the time the petitioner spent in good standing at liberty on parole. The petitioner was later reparoled and shortly after his release, he was arrested on new criminal charges. The Board provided the petitioner with a notice of charges charging him as a CPV, to which the petitioner admitted. The Board, in recommitting the petitioner as a CPV, revoked the "sentencing credit that [the petitioner] received for days he spent in good standing at liberty on parole"

8

when he was recommitted as a TPV. *Penjuke*, 203 A.3d at 403. The petitioner filed a request for administrative relief with the Board challenging, among other things, its revocation of credit for the period he spent in good standing at liberty on parole. The Board denied the petitioner's request for administrative relief and, thereafter, the petitioner filed a petition for review with this Court. Upon review, we held that given the statutory language of Section 6138(c)(2) that a parolee recommitted as a TPV "shall be given credit" for time spent at liberty on parole, "when the Board recommits a CPV, it cannot revoke the credit that a parolee [was] granted in a **previous parole** that resulted in recommitment as a TPV." *Id.* at 420 (emphasis added). We declared that "the Board could not 'reach back' into the **past periods** of parole and [] take away or revoke credit that was previously granted to [a parolee] as a TPV." *Id.* at 417 (citation omitted) (emphasis added). In reaching this conclusion, we reasoned that the statutory language of Section 6138(a)(2) that a parolee "shall be given no credit for the time at liberty on parole," "is circumscribed and intended to apply only to the single and specific period of parole that led to recommitment as a CPV." *Id.* at 415.

Here, Petitioner received credit for his time spent in good standing at liberty on parole in the Board's May 27, 2015 Order to Recommit Petitioner as a TPV. In its March 8, 2017 Order to Recommit Petitioner as a CPV, Petitioner did not receive credit for his time spent in good standing at liberty on parole. Petitioner contends that the Board's revocation of credit that was granted in its May 27, 2015 Order to Recommit violates *Penjuke*. We disagree. Unlike the petitioner in *Penjuke*, Petitioner here committed the criminal conduct that led to his recommitment as a CPV during the **same parole period** that he absconded from the CCC, which led to him first being recommitted as a TPV, and then as a CPV.

9

Instead of *Penjuke*, this case is more akin to *Kazickas v. Pennsylvania Board of Probation and Parole*, ___ A.3d ___, (Pa. Cmwlth., No. 214 C.D. 2019, filed February 7, 2020).

Similar to the present matter, the petitioner in *Kazickas* committed the technical violations that led to his recommitment as a TPV during the **same parole period** as the criminal activity that led to his recommitment as a CPV. As in the present matter, the Board in *Kazickas* first awarded the petitioner credit for time in good standing at liberty on parole when it recommitted the petitioner as a TPV, and revoked this credit when it subsequently recommitted the petitioner as a CPV. On appeal, we affirmed the Board's decision to revoke the credit the petitioner received when he was recommitted as a TPV, reasoning that "[b]ecause the criminal conduct that led to [the petitioner's] CPV recommitment occurred during the **same** parole period as the violation that led to his TPV recommitment, *Penjuke*" is not applicable. *Kazickas*, ___ A.3d at ___, slip op. at 12 (emphasis added). Before he could be recommitted as a CPV, Petitioner had to be convicted of a criminal offense; this takes more time than is required to determine whether there were technical parole violations. It was appropriate for the Board to wait until it received notice that Petitioner was convicted before revoking his credit for time at liberty on parole.

In the present matter, unlike in *Penjuke*, the events that led to Petitioner being recommitted as a TPV and later as a CPV occurred during the **same** parole period. Pursuant to *Kazickas*, since the conduct that led to Petitioner's recommitment as a TPV and later as a CPV occurred during the same parole period, *Penjuke* does not apply. As such, the Board did not violate the holding of

10

*Penjuke* by revoking the credit Petitioner received for good standing at liberty on parole.

Now we turn to Petitioner's arguments regarding whether the Board should have awarded Petitioner credit towards the 2012 Sentence for the period of April 30, 2015, to November 3, 2016, and whether the Board used the wrong return to custody date. Pursuant to Section 6138(a)(2) and (a)(5) of the Prisons and Parole Code, Petitioner, as a CPV, is required to serve the remainder of his 2012 Sentence before the commencement of his service of the 2016 Sentence. 61 Pa.C.S. § 6138(a)(2) & (5). The Board's 2017 Order to Recommit reflects that Petitioner had 1257 days remaining on the 2012 Sentence after subtracting 88 days' credit for time spent in confinement solely on the Board's detainers. (C.R. at 96.) Specifically, Petitioner was awarded credit towards the 2012 Sentence for the periods of September 26, 2014, to December 10, 2014, and April 30, 2015, to May 13, 2015. (*Id.*) Petitioner takes issue with the latter period of credit and suggests that he should have received credit from April 30, 2015, until November 3, 2016, when the 2016 Sentence was imposed. We disagree.

While "the period of time for which [a] parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody," 61 Pa.C.S. § 6138(a)(4), it is well settled that

> if a [parolee] is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on [] new criminal charges, the time which [the parolee] spent in custody shall be credited against [the parolee's] original sentence. If a [parolee], however, remains incarcerated prior to trial because [the parolee] has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence.

11

*Gaito*, 412 A.2d at 571. Here, Petitioner was picked up on the Board's detainer on April 30, 2015. While being held on the Board's detainer, bail was set on the 2015 Charges on May 13, 2015, and Petitioner did **not** post bail for those charges. Therefore, Petitioner was held on **both** the Board's April 30, 2015 detainer and on the 2015 Charges until November 3, 2016, when common pleas issued the 2016 Sentence. Pursuant to *Gaito*, Petitioner is not entitled to credit for the period of April 30, 2015, until November 3, 2016, because Petitioner was being held on **both** the Board's detainer and the 2015 Charges. As such, the only period of this time frame to which Petitioner is entitled to credit towards the 2012 Sentence is from April 30, 2015, to May 13, 2015, when he was being held **solely** on the Board's detainer. The remainder of this time frame, between when bail was set on the 2015 Charges and when the 2016 Sentence was imposed, is to be credited towards his service of the 2016 Sentence. (C.R. at 60-61, 65-66.)

Petitioner takes issue with the fact that in the May 27, 2015 Order to Recommit, the Board lists April 30, 2015, as Petitioner's return to custody date and in the March 8, 2017 Order to Recommit, Petitioner's return to custody date is listed as November 3, 2016. However, this change in Petitioner's return to custody date merely reflects that Petitioner again began to serve the 2012 Sentence once he was adjudged on the 2015 Charges. This change is not a modification of credit being awarded to Petitioner. Accordingly, this case presents a straightforward application of *Gaito*. As such, we conclude the Board did not err by not awarding Petitioner credit towards the 2012 Sentence for the period of April 30, 2015, to November 3, 2016, because Petitioner was confined on both the Board's detainer and the 2015 Charges.

12

## III. Conclusion

For the foregoing reasons, we conclude that the Board did not err in calculating Petitioner's maximum sentence date in its March 8, 2017 Order to Recommit.

_____

**RENÉE COHN JUBELIRER,** Judge

Judge Wojcik concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamir Hammett,                               :
                    Petitioner               :
                                             :
          v.                                 :     No. 13 C.D. 2019
                                             :
Pennsylvania Board of Probation              :
and Parole,                                  :
                    Respondent               :

# **O R D E R**

**NOW**, May 8, 2020, the decision of the Pennsylvania Board of Probation and Parole, mailed October 16, 2018, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge