J-S28005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH LAMAR RANDLE | : | |
| | : | |
| Appellant | : | No. 153 MDA 2025 |

Appeal from the Order Entered November 1, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001496-2021

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:               **FILED: MAY 6, 2026**

Kenneth Lamar Randle appeals from the order committing him to serve

the remainder of his sentence following a parole revocation.[1]  Upon review,

---

[1] Although Appellant has now completed his parole, we nonetheless consider the issues raised therein as they are of great public importance, capable of repetition, and likely to escape review. ***Accord Lawson v. Com., Pennsylvania Bd. of Prob. & Parole***, 524 A.2d 1053, 1055 (Pa.Cmwlth. 1987) (applying exception after the appellant completed parole because "of the importance of the issue of fines, costs and restitution and that of the imposition of backtime" (cleaned up)). ***See also Pub. Def.'s Off. of Venango Cnty. v. Venango Cnty. Ct. of Common Pleas***, 893 A.2d 1275, 1279–80 (Pa. 2006) (discussing the exception to the mootness doctrine "where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision" (cleaned up)). ***But see Taylor v. Pennsylvania Bd. of Prob. & Parole***, 746 A.2d 671, 675 (Pa.Cmwlth. 2000) (declining to apply that exception because it did not meet the likely to evade review element as "[t]here will be instances where a parolee will be able to challenge the denial of an administrative appeal as untimely on the basis of the 'prisoner mailbox rule' before the parolee's maximum term expires").

we conclude that the court revoked Appellant's parole in violation of our Rules of Criminal Procedure. Therefore, we vacate the orders revoking Appellant's parole and recommitting him, and remand the matter to the trial court.

We previously detailed the underlying history thusly:

Appellant pled guilty in 2022 to one count each of driving while operating privileges were suspended and fleeing, as well as multiple summary traffic offenses, and was sentenced to six to eighteen months of incarceration. Specifically, he had a maximum date of February 12, 2024, and was granted parole in April 2023. While on parole, he was arrested for defiant trespass and disorderly conduct. Following a preliminary hearing on February 7, 2024, the charges were held for court. Five days later, on the last day of his parole term, the Commonwealth moved to revoke based on the new pending charges that he failed to inform his parole officers about as well as failing to pay towards his costs and fines.

The court conducted a hearing later that month.[2] Appellant was sent notice of the proceeding at his last known address, but the parole office was unable to make contact with him. Notwithstanding the presence of neither Appellant nor any counsel on his behalf, the court conducted a hearing *in absentia*, wherein it found cause to revoke Appellant's parole based upon the Commonwealth's evidence, ordered its revocation, denied him credit for his time spent at liberty, and issued a bench warrant based on his failure to appear. Since Appellant's whereabouts were unknown, the court waited to recommit Appellant until it could ascertain the new maximum date.

_____

[2] We have explained:

[A] defendant is generally entitled to two separate hearings prior to revoking probation [or parole]. The purpose of the first (**Gagnon I**) hearing is to ensure against detention on allegations of violation that have no foundation of probable cause. The purpose of the second (**Gagnon II**) hearing is to determine whether facts exist to justify revocation of parole or probation.

- 2 -

> ***Commonwealth v. Cappellini***, 690 A.2d 1220, 1227 (Pa.Super. 1997) (cleaned up).  It is unclear which type of hearing the trial court conducted, though we presume it was a ***Gagnon II*** hearing because it resulted in revocation and because Appellant was not detained at the time.  . . .
>
> Appellant surrendered to authorities in October, at which time he was committed to the Schuylkill County Prison and appointed [counsel].  The court thereafter held two more hearings, which both Appellant and counsel attended.  The first was simply to confirm [Appellant's] new maximum date.[3]  The court explained that it already had a hearing where it heard the Commonwealth's evidence and revoked his parole, and it was holding the October hearing to calculate his maximum date based upon when he was apprehended.  However, it did not set a maximum date at that time.  Instead, the court held a hearing two days later to afford Appellant the opportunity with the assistance of [his] attorney to tell [the court] what's been going on in [his] life.  After taking the matter under advisement, the court entered an order later that day that determined both new maximum and re-parole eligibility dates, and thus imposed Appellant's revocation sentence.
>
> _____
> [3] The court explained in its Pa.R.A.P. 1925(a) opinion that it also resolved the revocation at that hearing.  The certified record contradicts this averment, as it is clear the court made a final revocation decision at the February hearing but deferred calculating Appellant's maximum date until after he was apprehended and the court conducted the subsequent, counseled hearings.
>
> Appellant timely filed a motion for reconsideration, which the court granted on January 9, 2025, to amend his maximum date.  The instant notice of appeal was filed within thirty days of that order.  The trial court and Appellant complied with the requirements of Pa.R.A.P. 1925.

***Commonwealth v. Randle***, 350 A.3d 179, 2025 WL 2992995, at *1–2

(Pa.Super. 2025) (non-precedential decision) (cleaned up).

Initially, counsel sought to withdraw pursuant to ***Anders v. California***,

386 U.S. 738 (1967).  Since we determined that there were non-frivolous

issues, we denied counsel's petition to withdraw and directed the filing of an advocate's brief on Appellant's behalf. *See Randle*, 2025 WL 2992995, at *5. Ultimately, new counsel was appointed, who has complied with that directive, and the Commonwealth has submitted a brief as appellee. Accordingly, the matter is now ripe for review. Appellant presents two issues for our consideration:

> [I.] Whether the lower court erred and abused its discretion in holding a parole revocation hearing *in absentia* on February 26, 2024?

> [II.] Whether the lower court erred and abused its discretion in revoking the Appellant's time at liberty of 307 days?

Appellant's brief at 5.

We begin with his first issue, which the Commonwealth concedes merits relief. *See* Commonwealth's brief at 2 ("The Commonwealth recognizes that a *Gagnon II* hearing should have been held with Appellant present and represented by counsel as required by Pa.R.Crim.P. 708(b)(1). Therefore, the Commonwealth is unopposed to having this case remanded for a new *Gagnon II* hearing, at which Appellant would be afforded the right to be present and to be represented by counsel.").

This Court has explained that "[f]ollowing parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement." *Commonwealth v. Kalichak*, 943

- 4 -

A.2d 285, 291 (Pa.Super. 2008) (cleaned up).  In that regard, we have highlighted the import of revocation hearings in the following manner:

> [T]he purposes of a court's parole-revocation hearing—the revocation court's tasks—are to determine whether the parolee violated parole and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment, are in order.  The Commonwealth must prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion.  In the exercise of that discretion, a conviction for a new crime is a legally sufficient basis to revoke parole.
>
> Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement.

*Id*. at 290–91 (cleaned up).

All parolees are "entitled to minimum due process protections because of the possible deprivation of liberty inherent in parole revocation proceedings." ***Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa.Super. 2000) (cleaned up).  While leaving the specifics up to the individual states, the Supreme Court of the United States outlined those minimum requirements to include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) **opportunity to be heard in person and to present witnesses and documentary evidence**; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (emphasis added).

The particular principles governing parole revocation procedures depend upon the supervising entity. Where a defendant "is sentenced to a maximum term of imprisonment of less than two years, the common pleas court retains authority to grant and revoke parole[,]" whereas defendants sentenced for longer periods are supervised under the authority of the Pennsylvania Board of Probation and Parole ("the Board"). *See Ferguson*, 761 A.2d at 618 (cleaned up); *see also* 61 Pa.C.S. § 6132(a)(2)(ii) (reaffirming that trial courts maintain authority to parole "persons sentenced for a maximum period of less than two years").

For those under the supervision of the courts of common pleas, like Appellant, the Pennsylvania Rules of Criminal Procedure provide in pertinent part that *Gagnon II* hearings must comply with the following:

**(A)** A written request for revocation shall be filed with the clerk of courts.

**(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708.

In its Rule 1925(a) opinion, the trial court found that it was unclear whether it had the authority to conduct a violation hearing without Appellant present. Thus, it found guidance from the rules governing supervision by the Board, which provide that "[t]he parolee has the right to be present during the entire proceeding, unless the parolee expressly waives that right, refuses to appear[,] or behaves disruptively." 37 Pa.Code § 71.2(13)(ii). Since "Appellant refused to appear, despite notice[,]" the court concluded that it was not improper for it to conduct the hearing *in absentia*. **See** Trial Court Opinion, 3/10/25, at 3.

Appellant counters that the trial court erred in failing to apply the "clear guidance" of Rule 708. **See** Appellant's brief at 15. That rule applies to county parolees under court supervision, as Appellant was, and plainly mandates that the court promptly hold a **Gagnon II** hearing "at which the defendant is present and represented by counsel[.]" Pa.R.Crim.P. 708(B)(1). That did not occur here. Even assuming Appellant had notice of the proceeding, the court revoked his parole and denied him credit for his time spent at liberty at a **Gagnon II** hearing held with neither Appellant nor his counsel present. Indeed, he was not even afforded counsel until **after** a final revocation decision had been made, though before he was officially recommitted and his maximum date set. The trial court should have issued the bench warrant for Appellant's failure to appear at the February **Gagnon II** hearing and continued the proceedings pending Appellant's apprehension and appointment of counsel. **Accord Commonwealth v. Christmas**, 995 A.2d 1259, 1263

(Pa.Super. 2010) (discussing "speedily as possible" portion of Rule 708(B)(1), and noting that "a court should not attribute to the Commonwealth delays caused by the defendant" (cleaned up)).

The **Gagnon II** hearing in the present matter was conducted in derogation of Rule 708(B)(1) as neither Appellant nor his counsel were present.  Thus, it violated Appellant's right to due process.  Based on the foregoing, we vacate the orders revoking Appellant's parole and recommitting him to serve the balance of his original sentence, and remand for a new **Gagnon II** hearing that complies with the mandates of Rule 708 to determine whether Appellant's parole should be revoked.  In light of our disposition, we do not reach Appellant's second issue.

Orders vacated.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/06/2026